The FEED STORE, INC., Appellant,

v.

**RELIANCE INSURANCE COMPANY, Appellee.**

No. A14–88–565–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 22, 1989.

Rehearing Denied July 27, 1989.

Harold B. Elsom, Houston, for appellant.

James Moore, Joyce B. Margarce, Jack G. Carnegie, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

OPINION

ROBERTSON, Justice.

This is a dispute over the existence of coverage under a comprehensive general liability insurance contract. Appellant The Feed Store, Inc. procured from Reliance Insurance Co. a policy which obligated Reliance to defend appellant against certain lawsuits. When Dairy Queen sued appellant for trademark infringement, Reliance refused to defend the suit, and appellant thereafter brought an action against Reliance. The trial court rendered summary judgment for Reliance. We affirm.

The relevant portions of the policy provide coverage for damages due to "advertising injury" although there is an exclusion for trademark infringement. Because resolution of this case hinges on the precise phraseology of the text, we shall set out the salient provisions:

II. PERSONAL INJURY AND ADVERTISING INJURY

LIABILITY COVERAGE

(A) The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory applicable to Section II, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgment or settlements.

(B) This insurance does not apply:

(6) to advertising injury arising out of

(a) failure of performance of contract, but this exclusion does not apply to the unauthorized appropriation of ideas based upon alleged breach of implied contract, or

(b) infringement of trademark, service mark or trade name, other than titles or slogans, by use thereof on or in connection with goods, products or services sold, offered for sale or advertised, or

(c) incorrect description or mistake in advertised price of goods, products or services sold, offered for sale or advertised;

Paragraph (A) creates a duty to defend when the suit seeks damages from advertising injury. One of the critical questions before us is whether Dairy Queen's infringement action was such a suit. If the answer is yes, we must then decide whether paragraph (B) excludes the Dairy Queen suit—or whether instead that litigation involved a slogan, in which event coverage would lie. We turn therefore to an examination of the infringement suit.

Dairy Queen filed a complaint against appellant in federal court, alleging service mark infringement. Dairy Queen had se-cured registration for the mark "Texas Country" in connection with various food products. Appellant was alleged to be using the phrase "Texas Country Cookin'" in its own business. Because Reliance denied coverage, appellant had to provide for its own legal defense. Judge Eldon B. Mahon found no likelihood of confusion and rendered judgment that Dairy Queen take nothing. At this point appellant commenced state court litigation against Reliance on the basis of the duty to defend clause. Reliance moved for summary judgment on the grounds that:

(1) Dairy Queen's suit sought injunctive relief only, not damages, and

(2) even if Dairy Queen sought damages, there should be no coverage because "Texas Country" is not a slogan—hence no duty to defend an action for service mark infringement.

The trial court ruled for Reliance without specifying the basis of its order. Affirmance is therefore proper if we agree with either of Reliance's arguments.

■ Our starting point then is the text of the policy. It creates a duty to defend against certain lawsuits seeking damages. The next step is to inspect Dairy Queen's complaint. That complaint nowhere purports to seek damages. We have searched in vain for an allegation of even one dollar in damages suffered and sought by Dairy Queen. Appellant bases its argument in part on Dairy Queen's allegations of financial expenditures in developing the service mark at issue. Appellant also points out that Dairy Queen stated two causes of action which *could* support damages, namely infringement and unfair competition. As its coup de grace, appellant then refers us to Dairy Queen's closing prayer for "other and further relief."

■ In ascertaining the scope of a duty to defend, courts should look to the language of the policy and the allegations in the complaint against the insured. *Fidelity & Guaranty Underwriters v. McManus*, 633 S.W.2d 787, 788 (Tex.1982). Under this analysis we cannot consider anything outside (a) the policy and (b) the pleadings, even if there is evidence tending

to show the suit is utterly specious. The effect of this "eight corners rule" is to minimize uncertainty in assessing a liability insurer's duty, as well as to favor the insured in cases where the merits of the action may be questionable. Thus we have no business passing on the actual outcome of the Dairy Queen litigation. Because this link in the logical chain is actually the crux of our case, we will include the entirety of Dairy Queen's prayer:

WHEREFORE, Plaintiff prays:

1. That the Defendant, and all others acting in concert be permanently enjoined and restrained from using in connection with restaurant services, "Texas Country Cookin'" or "Texas Country", or "Texas Country" in combination with any other words.

2. For such other and further relief as shall seem to this Court be required in equity and good conscience.

We have no difficulty in dismissing the contention that the suit was one for damages simply because Dairy Queen spent money developing its mark. Similarly, to say that Dairy Queen pleaded unfair competition and infringement is common ground; but alleging a tort is not the same as asking for a particular remedy. To the contrary, if a plaintiff wanted nothing more than equitable relief, he would still need to allege entitlement to an injunction by pleading a wrong from which the chancellor should relieve him. The only remaining question is whether the Mother Hubbard clause of the prayer made the action one for damages.

Plainly, the answer is no. If the boilerplate conclusion in Dairy Queen's complaint encompasses a request for money damages, then we suppose every lawsuit ever filed also sought damages. And there would be no reason to confine the content of invisible allegations to damages. All lawsuits seeking "other and further relief" would precipitate a duty to defend.

Although the foregoing discussion adequately disposes of the issue, we wish to make two points in closing. First, we agree with appellant's argument for strict construction against the insurer. Long-settled Texas law requires resolution of ambiguities in an insurance contract in favor of the insured and against the insurance company. This principle is beyond dispute but quite immaterial to our decision, because both sides agree that the policy is clear and unambiguous. In our view appellant seeks to transplant the rule of *contra proferentum* out of the realm of contract interpretation and into the area of construing *pleadings*. It is by this approach that appellant hopes we will read the Mother Hubbard clause as meaning all things to all men. Yet the law is, and always has been, otherwise. There is good reason to construe a printed form against its author, and the law encourages an insurance company to think carefully about its draftsmanship. But it takes a great leap to transform this rule into one which construes a *third party's* pleadings strictly against the insurance company, a leap we simply cannot make.

Second, it might have been possible to decide this case on other grounds. That is, we could have chosen to consider the question whether the Dairy Queen suit involved a slogan. We have avoided that question because of the complexities of trademark law, and we express no opinion on the issue.

The judgment is affirmed.