

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-10-00121-CV

_____

IN THE INTEREST OF J.R.K., A CHILD

On Appeal from the Sixth Judicial District Court
Lamar County, Texas
Trial Court No. 74125

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

At the May 2010 hearing on Glenna and Robert Kelley's competing motions to modify the conservatorship of their son J.R.K., Glenna reserved the right to submit evidence to the trial court, if J.R.K. expressed to the trial court his desire to reside with Robert. At that time, however, J.R.K. expressed his preference to live with Glenna, and the trial court ruled accordingly. Later, when J.R.K. had a change of heart and the trial court reopened the evidence on Robert's motion, a new hearing was held in August 2010, at which J.R.K. expressed his desire to live with Robert, and Glenna sought, but was denied, the right to submit evidence of why she should continue to be the custodial parent. From the trial court's order permanently changing custody in Robert's favor, Glenna appeals, attacking both the sufficiency of the evidence and the trial court's denial of her request to submit evidence at the August hearing. Because denying Glenna the right to submit evidence was error, we reverse the order and remand this matter to the trial court for further proceedings in accordance with this opinion.

At the original May 2010 hearing, both parties agreed that the trial court should visit with eleven-year-old J.R.K. in chambers to determine his wishes. Robert agreed to abide by the child's wishes concerning conservatorship.[1] Before the trial court's interview with J.R.K., Glenna indicated that, if J.R.K. expressed a desire not to live with her, she desired to present

---

[1]Robert's attorney made the following statement to the trial court: "[W]e have a split-time arraignment [sic]. Both parties have filed for the custody. Like I said, he's now 11 years old. Whatever he wants to do, my client said is fine."

evidence showing why she should be awarded custody in spite of such an opinion.[2]   J.R.K. did, in fact, indicate that he wished to reside with Glenna,[3] thus precluding Glenna's need to offer testimony regarding conservatorship.   The trial court orally ruled that Glenna and Robert would be joint managing conservators, with Glenna having the right to determine J.R.K.'s primary place of residence.[4]

Almost twelve weeks later, while the order from the earlier hearing remained unsigned, Robert filed a motion to reopen the evidence based on J.R.K.'s statement to Robert that he wanted to live with him.[5]   Pursuant to the request to reopen the evidence, the trial court interviewed J.R.K. a second time.   Although there is no record of a hearing at the time of the second interview, it is apparent the trial court changed its custody decision in favor of Robert at that time.   This fact was clarified at an August 29 hearing, the purpose of which (both parties believed) was to offer evidence regarding conservatorship.[6]   The trial court indicated that it previously reopened the

---

[2]Glenna's attorney stated, "I think everybody anticipates that he's going to say he wants to live with mom.   If, for some reason, he doesn't say that, then I'm going to have to be in the position of having to put on evidence as to why he ought to be with mom rather than dad."

[3]The remainder of the hearing centered on whether Lamar County residency restrictions should remain in place for Glenna and whether Robert's child support payments should be modified.

[4]Robert was granted visitation in accordance with the standard possession order.   The trial court increased Robert's child support payments and denied Glenna's request to lift the Lamar County residency restriction.

[5]Glenna opposed the motion to reopen, claiming the request was not the result of new evidence or an inadvertent mistake.   According to Robert's affidavit, J.R.K. had a change of heart.   The timing of this change coincided with Robert's extended summer possession period with J.R.K.

[6]Counsel for Robert stated, "We had a hearing a few months ago and changed custody to the mother.   Subsequent to that time, we filed a motion to reopen.   You interviewed the child again.   He wanted to live with the father.   You

evidence (at the prior hearing for which there is no record), interviewed J.R.K., and made a permanent change of custody in favor of Robert at that time. The trial court reopened the evidence for the sole purpose of conducting a second interview with J.R.K. The final order thereafter awarded Robert the exclusive right to designate the primary residence of J.R.K.

A trial court's modification of conservatorship is reviewed for abuse of discretion. *In re P.M.B.*, 2 S.W.3d 618, 621 (Tex. App.—Houston [14th Dist.] 1999, no pet.). It is an abuse of discretion for a trial court to rule without supporting evidence. *Id.* (citing *Gen. Tire*, *Inc. v. Kepple*, 970 S.W.2d 520, 525 (Tex. 1998)).

The rules of procedure in cases affecting the parent-child relationship are the same as those in civil cases generally. TEX. FAM. CODE ANN. § 105.003(a) (West 2008). Because the competing motions for modification were considered jointly at the final hearing (as extended by the subsequent reopening of the evidence) both Glenna and Robert had the burden to prove their competing claims. *See* TEX. R. CIV. P. 262, 265(b). Glenna was entitled to the opportunity to introduce evidence. *See* TEX. R. CIV. P. 265(d). In a suit seeking to modify the parent-child relationship, the proponent must establish that modification would be in the best interest of the child and:

> (1) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the earlier of:
>
> > (A) the date of the rendition of the order; or

---

switched it back to the father. Mr. Starnes, at that time that we had that hearing on the motion to reopen, asked to put on evidence to you. And I believe that's what we're here about today."

(B) the date of the signing of a mediated or collaborative law settlement agreement on which the order is based;

(2) the child is at least 12 years of age and has expressed to the court in chambers as provided by Section 153.009 the name of the person who is the child's preference to have the exclusive right to designate the primary residence of the child; or

(3) the conservator who has the exclusive right to designate the primary residence of the child has voluntarily relinquished the primary care and possession of the child to another person for at least six months.

TEX. FAM. CODE ANN. § 156.101 (West Supp. 2010).

In response to Glenna's claims that she was not afforded the opportunity to present evidence, Robert contends the trial court heard ample evidence at the temporary hearing and again at the final hearing to permit a ruling on modification.[7] Robert cites testimony from the temporary hearing, but does not claim such evidence supports either a material and substantial change in circumstances or the best interests of the child. Moreover, this testimony was not introduced or admitted as evidence at the final hearing. Accordingly, the evidence from the hearing on temporary orders could neither be considered by the trial court in reaching its final orders, nor by this Court on reviewing the final order. *In re M.B.D.*, No. 06-10-00015-CV, 2011 WL 1709895, at *2 (Tex. App.—Texarkana May 6, 2011, no pet.) (mem. op.); *May v. May*, 829 S.W.2d 373, 376 (Tex. App.—Corpus Christi 1992, writ denied).

Robert further contends that evidence at the final hearing supports the modification order.

---

[7]Robert further contends Glenna could have presented her evidence at the final hearing, but failed to do so. Robert does not claim Glenna waived her right to offer evidence.

Robert testified that he is now married and has a new baby. Further, J.R.K. was close to Robert's family, who live in the area. Glenna was considering a move in order to increase her income and had spoken to J.R.K. about the case. Robert had no intent to move from the area or to change J.R.K.'s school. Robert was steadily employed, had a close relationship with his son, and J.R.K. wanted to live with him. Robert maintains that this evidence represents a material and substantial change in the circumstances of the parties since the decree of divorce was entered. Robert further contends that the modification is in the child's best interests, because the split time possession schedule was not a workable arrangement for J.R.K. Glenna talked to the child about custody and did not tell him of her desire to move from the area. On the other hand, Robert claims that, because he is now remarried, has a new baby, intends to live in the same place, and has a large family in the area with whom J.R.K. is close, the modification is in J.R.K.'s best interests.

Robert cites the foregoing testimony in support of his contention that the trial court did not make a ruling without hearing evidence and that this evidence is both legally and factually sufficient to support the judgment. Indeed, the trial court had before it the foregoing evidence in advance of its ruling. Glenna complains, however, that she was denied the opportunity to present her own evidence regarding conservatorship. Glenna's brief testimony at the earlier hearing centered on geographical restrictions and child support. This testimony was offered only after the trial court made a ruling on the record that primary conservatorship would be with Glenna. In advance of that ruling, Glenna had expressly reserved her right "to put on evidence as to why he

6

ought to be with mom rather than dad," if J.R.K. had indicated he wanted to reside with his father. Once the trial court ruled in her favor, there was no need for Glenna to offer such evidence.

When the evidence was reopened for the purpose of a second interview by the trial court with J.R.K., Glenna was denied the opportunity to present evidence regarding conservatorship. At the August hearing, the following exchange took place between counsel for Glenna and the trial court:

> [Attorney for Petitioner]: We had an agreement back in May, that agreement covered everything from custody to the motion to enforcement and contempt. Since that agreement is blown out of the water now, and you said you would allow them to reopen, then we're prepared to put on evidence of our motion for enforcement and contempt. We also wanted to put on evidence in response to their motion to reopen.
>
> . . . .
>
> THE COURT: My position is that - - when I talked to the child, I made the permanent change at that time.
>
> [Attorney for Petitioner]: That was not the way I understood that, Judge.
>
> . . . .
>
> THE COURT: As far as I'm concerned, I'm ready to sign a final order.

After this hearing, Glenna filed a formal bill of exception, setting forth the testimony she would have given if provided the opportunity to do so. After a brief hearing with respect to this formal bill, the trial court denied the bill.[8] In an evidentiary context, a bill of exception is to

---

[8]Counsel for Robert objected to the formal bill of exception, contending that the trial court could not know what Glenna's testimony would have been. The trial court then stated, "I'm going to deny it."

7

tender evidence for the record when a trial court refuses to admit evidence and counsel then provides that evidence for appellate review. *See* TEX. R. APP. P. 33.2. For a bill of exception, the evidence must have been presented to the trial court at trial or no error is shown. *Spivey v. James*, 1 S.W.3d 380, 385 (Tex. App.—Texarkana 1999, pet. denied); *Clone Component Distribs. of Am., Inc. v. State*, 819 S.W.2d 593, 596–97 (Tex. App.—Dallas 1991, no writ) (bill of exception must show evidence was actually offered and excluded). Here, the proffered testimony was not actually offered and excluded. While there was a request to present testimony, the trial court did not hear the proffered testimony before excluding it. Rather, the trial refused Glenna's request to testify. In this case, the filing of a formal bill of exception was unnecessary.

Normally, a complaint regarding the exclusion of evidence can be made on appeal only if the appellate record reflects the substance of the excluded evidence. TEX. R. EVID. 103(a)(2). This can be done through a formal or an informal bill of exception (offer of proof). *See Bobbora v. Unitrin Ins. Servs.*, 255 S.W.3d 331, 335 (Tex. App.—Dallas 2008, no pet.) This rule does not apply, however, when the trial court refuses to permit the appellant to present any evidence. *See Producer's Constr. Co. v. Muegge*, 669 S.W.2d 717, 719 (Tex. 1984); *Safway Scaffold Co. of Houston, Inc. v. Safway Steel Prods., Inc.*, 570 S.W.2d 225, 229 (Tex. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). When the appellant is not allowed to present any evidence at trial and the appellant objected to this action, there is no necessity for a bill of exception. *Safway Steel Prods., Inc.*, 570 S.W.2d at 229.

Here, once the trial court reopened the evidence and J.R.K. opted for Robert, Glenna sought, but was denied, the right to submit evidence on point.[9]  We hold that the trial court thus erred in denying Glenna the opportunity to present evidence in support of her motion.  *See* TEX. R. CIV. P. 262, 265.  We need not address the issue of whether the trial court abused its discretion based on the alleged legal and factual insufficiency of the evidence.[10]

We reverse the trial court's order and remand to the trial court for further proceedings consistent with this opinion.


Josh R. Morriss, III
Chief Justice

Date Submitted:     June 24, 2011
Date Decided:       July 8, 2011

---

[9]Glenna had no opportunity to offer evidence of a material and substantial change of circumstance or why it was in the child's best interests to live with her.

[10]Counsel for Glenna indicated at the August hearing that there was an agreement that Glenna be named joint managing conservator with the exclusive right to determine the child's primary residence and that, in exchange, neither party would pursue their respective motions for enforcement.  No such agreement was dictated into the record.  Even though Glenna also filed a motion for enforcement of back due child support, she does not claim on appeal that she should be entitled to present evidence regarding that issue.

9